UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE LINDSEY, | ) | Case No.: 1:04 CV 2239 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| CITY OF CLEVELAND, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Plaintiff Maurice Lindsey ("Plaintiff") brings the instant action against Defendants Jamaal Ansari, Frank Strimpel, Bob Kanzic, and the United States of America (collectively, "Defendants"). Pending before the court are: (1) Defendant Kanzic's Motion to Dismiss ("Kanzic's Mot.," ECF No. 74); (2) Defendant Ansari's Motion for Summary Judgment ("Ansari's Mot.," ECF No. 80); (3) Defendant Strimpel's Motion for Summary Judgment ("Strimpel's Mot.," ECF No. 81); and (4) Defendant United States' Motion to Dismiss and Motion for Summary Judgment ("U.S. Mot.," ECF No. 82).

## I. FACTS AND PROCEDURAL HISTORY

### A. Relevant Facts

In October 2002, the Federal Defendants, all members of a Drug Enforcement Agency ("DEA") Task Force, were assisting the Cleveland Police Department with its narcotics and vice units. (Transcript of Evidentiary Hearing, "Tr.," ECF No. 80-2, at 12.) As part of that operation, an

individual Source of Information ("Informant") contacted Cleveland Police Department Detective Rinkus, stating that he knew a person by the name of Moe who was a crack cocaine dealer on the East Side of Cleveland. Moe is Plaintiff's nickname. (*Id.* at 12.)

The Federal Defendants and Cleveland Police Department subsequently arranged a "buy-bust" operation on October 15, 2002, to obtain evidence about Plaintiff's alleged drug trafficking. (*Id.*; Ansari Mot. at 3.) The Informant contacted Plaintiff to arrange for the purchase of crack cocaine that evening behind the Honeydew Lounge on St. Clair Avenue in Cleveland, Ohio. The officers searched the informant and then provided him with a communication device to monitor his conversation with Plaintiff. The officers then followed the informant to the rear parking area of the Honeydew Lounge.

At 9:29 p.m., Plaintiff approached the informant and discussed the sale of crack cocaine. (Tr. at 15-16.) When the informant saw the crack cocaine that Plaintiff was holding, he advised the investigators by way of a pre-arranged signal given through the communication device, initiating the bust. When investigators approached, Plaintiff fled the scene, and officers on foot pursued Plaintiff. Other officers followed the Informant to a predetermined location and recovered approximately 100 grams of crack cocaine, which the Informant had obtained from Plaintiff.

Meanwhile, according to Plaintiff, he was tackled by a police officer as he attempted to flee. (*Id.* at 27-28.) Plaintiff was then hit on the head with a handgun or flashlight. (*Id.*; Compl. ¶ 11.) Plaintiff testified at the evidentiary hearing that the officer who struck him on the head was a bald, black man who weighed approximately two hundred pounds. (Tr. at 58.) Plaintiff later stated in his Affidavit opposing the pending Motions that it was Officer Ansari who struck him with either a pistol or a flashlight. (Lindsey Aff., ECF No. 83-5, ¶ 3.) Plaintiff asserts that he was kicked in the

face after he fell to the ground. (Compl. ¶ 11.) At the evidentiary hearing, Plaintiff could not describe the officer who kicked him. (Tr. at 58.) He later stated in his Affidavit that it was Officer Ansari. (Lindsey Aff., ECF No. 83-5, ¶ 3.) However, Officer Ansari testified at the evidentiary hearing that his role in the operation was stationary surveillance, and that he did not see Plaintiff flee, nor did he chase him, arrest him, or take him to the hospital. (Tr., at 40-44.) As a result of the injuries he sustained during his arrest, Plaintiff suffered a cut on the back of his head that required four stitches and bruising to his face. (Compl. ¶ 12.)

Plaintiff was questioned at the scene and then transported to the Cleveland Police Department, Second District Office for further questioning. (Tr. at 29.) Plaintiff asserts that during this approximately thirty to forty minutes of questioning, Defendants Strimpel and Kanzic threatened to withhold medical care if Plaintiff did not state that his injuries were a result of falling. (Compl. ¶ 15.) Indeed, according to a police investigation report, Plaintiff did tell the police that his head injury was the result of his falling and hitting his head on an asphalt curb when he was arrested. (Police Investigation Report, ECF No. 80-5.) Defendant Kanzic and another Cleveland Police Officer, Detective Rinkus, took Plaintiff to Lutheran Hospital at 10:47 p.m. to receive medical care. (Hospital Report, ECF No. 80-9, at 1, 3.) The Hospital Report states that Plaintiff had a laceration on the back of his scalp with bleeding under control, had sustained no loss of consciousness, did not vomit, and had no neck pain or other injuries. (*Id.*) The Hospital placed four sutures in Plaintiff's scalp at 11:35 p.m. and released Plaintiff in good condition with a prescription for Motrin, a non-narcotic drug. (*Id.*)

### B. Procedural History

On August 23, 2007, Plaintiff amended his Complaint to state three causes of action. First,

Plaintiff asserts that Defendants Ansari and Strimpel violated his Fourth and Fifth Amendment rights by using excessive force and by failing to provide prompt medical treatment, respectively. (Am. Compl., ECF No. 71, ¶¶ 21-28.) Second, Plaintiff asserts that Defendant Kanzic violated Plaintiff's constitutional right to receive prompt medical treatment under the Fourteenth Amendment of the United States Constitution. (*Id.* ¶¶ 29-32.) Third, Plaintiff asserts a claim against Defendant United States under the Federal Tort Claims Act. (*Id.* ¶¶ 33-38.)

On September 17, 2007, Defendant Kanzic moved to dismiss Plaintiff's Amended Complaint, pursuant to Rule 12(b)(6). On December 17, 2007, Defendants Ansari and Strimpel moved for summary judgment, and Defendant United States filed a Motion to Dismiss and a Motion for Summary Judgment.

## II.  MOTION TO DISMISS

### A.  Rule 12(b)(6) Dismissal Standard

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6). *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and recently in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) clarified the law regarding what the plaintiff must plead in order to survive a Rule 12(b)(6) motion.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Id.* at 555. Even though a Complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal*, 129 S.Ct. at 1949, further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

**B. Delay of Medical Treatment - Defendant Kanzic's Motion to Dismiss**

Defendant Kanzic moves the court to dismiss Plaintiff's § 1983 claim pursuant to Federal Rule of Civil Procedure 12(b)(6). To state a claim under § 1983, the plaintiff must: (1) identify a violation of a clearly established constitutional right; and (2) show that the officers acted in an objectively unreasonable manner. *Waters v. City of Morristown*, 242 F.3d 353, 360 (6th Cir. 2001).

Plaintiff alleges that Defendant Kanzic violated the Due Process Clause of the Fourteenth

Amendment by acting with deliberate indifference when he allegedly failed to provide Plaintiff with necessary immediate medical attention. The test to determine whether an officer acted with deliberate indifference in failing to provide medical attention has an objective and subjective component. *Preyor v. City of Ferndale,* 248 F. App'x 636, 642 (6th Cir. 2007); *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). The objective component requires the existence of a "sufficiently serious" medical need. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To establish this, the plaintiff must typically place medical evidence on the record that establishes the detrimental effect of the delay in medical treatment. *Napier*, 238 F.3d at 742. However, "where a plaintiff's claims arise from an injury or illness 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention,' the plaintiff need not present verifying medical evidence to show that, even after the delayed necessary treatment, his medical condition worsened or deteriorated." *Blackmore*, 390 F.3d at 899 (quoting *Gaudreault v. Salem*, 923 F.2d 203, 208 (1st Cir. 1990)).

> The subjective component requires a plaintiff to show that:
>
>> "the official knows of and disregards an excessive risk to inmate health or safety," which is to say "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2005) (quoting *Farmer*, 511 U.S. at 837); *Preyor,* 248 F. App'x at 642. The question of whether an "official had the requisite knowledge of a substantial risk" may be answered by "inference from circumstantial evidence." *Farmer*, 511 U.S. at 842.

In his Motion to Dismiss, Defendant Kanzic argues that Plaintiff fails to state a claim upon which relief can be granted because he cannot satisfy the objective or subjective component of the

-6-

deliberate indifference standard. For the objective component, Defendant argues that Plaintiff failed to allege that the delay in medical treatment posed a substantial risk of harm, so Plaintiff has not pled the existence of a sufficiently serious medical need. (Kanzic Mot., at 5.) As for the subjective component, Kanzic argues that "Plaintiff's amended complaint does not contain any factual allegations to suggest Detective Kanzic was aware of any substantial risk of serious harm that would be brought about through a delay in medical care." (*Id*., at 6.) Furthermore, Kanzic argues that Plaintiff has not pled that he suffered harm as a result of Kanzic's alleged inaction because "Plaintiff does not allege that the treatment for his injury was in any way complicated by or more extensive due to any alleged delay." (*Id*., at 2.)

Plaintiff argues in his Opposition to Kanzic's Motion to Dismiss that the factual allegations on the face of the Amended Complaint are sufficient to withstand dismissal. Plaintiff argues that the following allegations in the Amended Complaint sufficiently plead the objective component of a delay of medical treatment claim:

(1) Plaintiff Lindsey was struck in the back of the head by a blunt instrument and kicked in the head. (Am. Compl., ¶ 11.)

(2) His head was cut and his face was bruised from the trauma. (*Id*., ¶ 12.)

Plaintiff argues that the following allegations in the Amended Complaint sufficiently plead the subjective component of a delay of medical treatment claim:

(1) Defendant Kanzic observed the nature of Lindsey's injuries during his interrogation. (¶¶ 13, 14.)

(2) Kanzic deliberately concealed the cause of Plaintiff's head injury, telling hospital personnel that Plaintiff's injuries were the result of his falling. Kanzic threatened Plaintiff with

physical abuse and further withholding of medical care if Plaintiff Lindsey did not agree to lie about the cause of his injuries. (*Id.*, ¶¶ 15, 17.)

Furthermore, Plaintiff alleges that he was not immediately taken to the hospital but instead was questioned for fifteen to twenty minutes and then later interrogated for an additional fifteen to twenty minutes. (*Id.*, ¶¶ 13, 14.) Plaintiff attaches his hospital report from Lutheran Hospital to his Opposition Motion but does not incorporate it into his arguments. (ECF No. 77-1.)

What is missing from Plaintiff's Amended Complaint is an allegation that the thirty to forty minutes Defendants waited to take Plaintiff to the hospital after he suffered an injury to his head resulted in a greater injury than would have occurred had Plaintiff been treated right away. All Plaintiff alleges in regard to his physical injuries is that:

> 19. As a direct and proximate result of Defendants' actions, Plaintiff Lindsey required four sutures for the cut on the back of his head caused by blows to the head.
> 20. As a direct and proximate result of Defendant's actions, Plaintiff Lindsey's face was bruised.

(Am. Compl., paras. 19, 20.) Because Plaintiff did not claim that the alleged delay in receiving medical treatment resulted in an increased injury, Plaintiff did not state a claim for a delay of medical treatment. *Bryant v. Wright*, Sl. Cop., 2010 WL 3629426, *2 (S.D.N.Y. Sept. 15, 2010) (Dismissing § 1983 claim for inadequate medical treatment because plaintiff did not plead any facts demonstrating that he was harmed by a delay in the referral to a specialist); *Napier*, 238 F.3d at 742 (Adopting the First, Third, and Eleventh Circuits' approach of examining "the seriousness of a deprivation by examining the effect of the delay in treatment."); *Twombly*, 550 U.S. at 570.

The court hereby grants Defendant Kanzic's Motion to Dismiss (ECF No. 74.)

### III. SUMMARY JUDGMENT

**A.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. ...

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990).  A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  Thus, in most cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id*. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

### B. LAW AND ANALYSIS

#### 1. Statute of Limitations for *Bivens* and Section 1983 Claims

Defendants assert that Plaintiff's *Bivens* and §1983 claims are time-barred because Plaintiff's Complaint was filed two years after the alleged violation occurred. Plaintiff does not dispute that *Bivens* and § 1983 claims are both subject to a two-year statute of limitations. *Browning v. Pendleton*, 869 F.2d 989, 990 (6th Cir. 1989); Ohio Revised Code § 2305.10. Plaintiff also does not dispute that his original Complaint was filed on November 10, 2004, three weeks after the expiration of the statutory period. However, Plaintiff asserts that his suit is not time-barred based on the application of the prisoner's mailbox rule.

As the court noted in its previous Order (ECF No. 49), while statutes of limitations are strictly enforced, the Supreme Court articulated an exception to this rule, which has come to be known as the prisoner's mailbox rule. *Houston v. Lack*, 487 U.S. 266 (1988). The *Houston* Court stated that prisoners' suits should not be barred due to the limitations period when prisoners have done "all that could be reasonably expected to get the [filing] to its destination within the required [time]." *Id.* at 269; *Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003); *Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002) (prisoners' mailbox rule applies to civil as well as criminal suits). Thus, a pro se prisoner's mailings are considered filed when given to jail administrators. *Houston v. Lack*, 487 U.S. at 276. As they did in their previous Motions to Dismiss (ECF Nos. 21, 41), Defendants again assert that Plaintiff is not entitled to the benefit of the prisoner's mailbox rule because: (1) the late filing was not due to any delay in mailing by the prison authorities; (2) it was Plaintiff's obligation to ensure that he mailed the Complaint to the correct address; and (3) the prisoner's mailbox rule does not exempt him from his allegedly unreasonable reliance upon the prison library directory.

The court again finds that this argument is not well-taken. As the court noted in its previous Order (ECF No. 49):

> In *Mayne v. Hall*, 122 F. Supp. 2d 86, 96-97 (D. Mass. 2000), the prisoner's mailbox rule was applied to facts nearly indistinguishable from the instant case...The court held that the prisoner's mailbox rule should apply, despite plaintiff's use of the courthouse's former address, because plaintiff acted reasonably in relying on the address provided by the court clerk. *Id.* ... As in *Mayne*, this court finds that Plaintiff should be given the benefit of the prisoner's mailbox rule because he acted reasonably when relying on the directory provided by the prison library for the address of this court.

(*Id.* at 7.) The court looks to local law not only to determine the statute of limitations, but also for closely related questions of tolling and application. *Bd. of Regents of the Univ. of the State of N.Y.*

*v. Tomanio*, 446 U.S. 478, 485-87 (1980).  Under Ohio law, "a defense based on the running of the statute of limitations is an affirmative defense, and [] <u>the burden of proof rests with the party asserting the defense</u>."  *Hedrick v. Honeywell*, 796 F. Supp. 293, 298 (6th Cir. 1992) (emphasis added). Because Defendants have not provided the court with any reason to alter its earlier finding that Plaintiff reasonably relied on the prison directory, the court again finds that Plaintiff should be given the benefit of the prisoner's mailbox rule.

### 2.  Qualified Immunity - Defendants Strimpel and Ansari

Plaintiff brought suit against Defendants Strimpel and Ansari pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971), which allows a private citizen to "recover money damages for any injuries he has suffered as a result of the agents' violation of the [Constitution]."  The Supreme Court in *Bivens* created a federal cause of action for money damages to redress violations of the Fourth Amendment, and has since been expanded to cover the Fifth Amendment.  *E.g. Davis v. Passman*, 442 U.S. 228 (1979).

Qualified immunity protects an official from liability if the official's conduct does not violate "clearly established" statutory or constitutional rights that a reasonable person would have known were in existence. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Court stresses that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  This does not mean that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful."  *Id*. (citing *Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985)).  Rather, it means that "in light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640.  *E.g.*, *Malley v. Briggs*, 475 U.S. 335, 344-345 (1986); *Mitchell*, 472

U.S. 528; *Davis v. Scherer*, 468 U.S.183 (1984).

In a qualified immunity case, the plaintiff bears the ultimate burden of proof to show that the defendants are not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir.1991). A defendant bears the initial burden of putting forth facts that suggest that he was acting within the scope of his discretionary authority. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992). If a defendant puts forth such facts, then "the burden shifts to the plaintiff to establish that the defendants' conduct violated a right so clearly established that any official in defendants' positions would have clearly understood that they were under an affirmative duty to refrain from such conduct." *Id*.

Previously in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court articulated the mandatory two-step rule, where the first step of showing a defendant had violated a constitutional right had to be shown before proceeding to step two on the issue of clearly established law. The Supreme Court departed from this mandatory two-step test in *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009). While the test may still be appropriate in many cases, it is no longer mandatory, allowing district and circuit court judges the freedom to determine which prong of the immunity analysis to address first. *Id.* at 821. The court finds the *Saucier* two-part test appropriate for the instant case. *See also Waters v. City of Morristown*, 242 F.3d 353, 360 (6th Cir. 2001) (A plaintiff must: (1) identify a violation of a clearly established constitutional right; and (2) show that the officer's acted in an objectively unreasonable manner.).

### a. Defendant Strimpel

Plaintiff asserts that Defendant Strimpel violated Plaintiff's Fifth Amendment rights by delaying Plaintiff's medical treatment. The Due Process Clause of the Fifth Amendment is the

federal counterpart to the due process clause of the Fourteenth Amendment. *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 196 (1989). As stated above, the test for whether Defendant violated § 1983 by delaying Plaintiff's medical treatment has an objective and subjective component. *Preyor,* 248 F. App'x at 642; *Napier*, 238 F.3d at 742. The objective component requires the existence of a "sufficiently serious" medical need. *Blackmore*, 390 F.3d at 895 (quoting *Farmer*, 511 U.S. at 834). The subjective component requires a plaintiff to show that

"the official knows of and disregards an excessive risk to inmate health or safety." *Clark-Murphy*, 439 F.3d at 286 (quoting *Farmer*, 511 U.S. at 837); *Preyor,* 248 F. App'x at 642.

Defendant Strimpel moves for summary judgment on the claim of delay of medical treatment. For the same reasons that the court granted Defendant Kanzic's Motion to Dismiss, the court grants Defendant Strimpel's Motion for Summary Judgment based on the doctrine of qualified immunity. The facts support a conclusion that Strimpel is immune because Plaintiff cannot state a claim for delay of medical treatment. Plaintiff has submitted no evidence showing that the thirty to forty-minute delay caused any greater injury beyond what he suffered during arrest. Therefore, there has been no showing that Defendants violated a clearly-established constitutional right of Plaintiff's or that Defendants acted in an objectively unreasonable manner.

Accordingly, the court finds that Defendant Strimpel is entitled to summary judgment in his favor on the basis of qualified immunity.

### b.  Defendant Ansari

Plaintiff alleges that Defendant Ansari violated Plaintiff's Fourth Amendment rights by subjecting Plaintiff to excessive force during Plaintiff's arrest by hitting Plaintiff on the head with

a blunt object and by kicking Plaintiff in the face. Ansari testified during the evidentiary hearing that he was not present at Plaintiff's arrest. He testified that he did not see Lindsey run and that he did not have any "visual knowledge" of the arrest. (Tr. at 42-43.) Plaintiff testified during the evidentiary hearing that he does not know who kicked him in the face. Plaintiff stated, "I fell to the ground and at the time I was kicked in the face so I don't know what officers kicked me in the face while I was on the ground." (*Id*., at 58.) Plaintiff, after testifying about what the two officers looked like who arrested him, stated that "those two officers was the two that took me to the hospital later on that night." (*Id*., at 57-59.) According to the Incident Report from that night, Detective Rinkus and Detective Kanzic were the officers who took Lindsey to Lutheran Hospital. (Use of Non-Deadly Force Report, at 2.)

Ansari argues in his Motion for Summary Judgment that Plaintiff's testimony shows as a matter of law that he did not kick Plaintiff in the face. Plaintiff does not address this point in his Opposition to Summary Judgment (ECF No. 83). However, Plaintiff's Affidavit attached to his Opposition Brief, Plaintiff states that, "Officer Anasari [sic] then began to continually kick me in the head." (Lindsey Aff., ¶ 3.) In addition, in Plaintiff's Amended Complaint, filed after the evidentiary hearing, he alleges that Ansari kicked him in the head. (Am. Compl., ¶ 11.)

It is well-recognized that a plaintiff cannot defeat summary judgment by submitting an affidavit that contradicts his own prior testimony. *Lockard v. General Motors Corp.*, 52 F.App'x 782, 789 (6th Cir. 2002) ("[A] party may not create a genuine issue of material fact to defeat summary judgment by filing an affidavit that conflicts with prior deposition testimony."); *Preston v. Clayton Homes, Inc.*, 167 F.App'x 488, 492 (6th Cir. 2006) ("In light of the direct conflicts between his deposition testimony and his affidavit, the district court properly declined to read

Preston's affidavit as evidence that other Clayton Homes employees agreed that he was terminated because of his age."). *See also Kruse v. Hawaii,* 857 F. Supp. 741, 750 (D. Haw. 1994), *aff'd,* 68 F.3d 331 (9th Cir. 1995) ("a non-movant cannot defeat summary judgment simply by submitting a declaration which directly contradicts that party's prior declarations or testimony"), *Richardson v. Bonds,* 860 F.2d 1427, 1433 (7th Cir. 1988) (same); *Martin v. Merrill Dow Pharm.,* 851 F.2d 703, 706 (3d Cir. 1988) (same).  Plaintiff provides no reason to the court why it should decline to apply this principle.  As a result, the evidence on the record is Ansari's testimony that he was not present during Plaintiff's arrest.

Plaintiff, relying on Federal Rule of Civil Procedure 56(f), argues that this court should not dismiss the claim against Ansari due to lack of evidence because "Lindsey has not had the opportunity to conduct full discovery." (Pl.'s Opp., 14.)  The court finds this request for additional discovery to be well-taken.  While the court has acknowledged that Plaintiff cannot normally contradict his own testimony, he would usually have an opportunity to attempt to develop other evidence in support of his claim.  He has had no such opportunity here, in light of the fact that all discovery was stayed pending the court's determination on the issue of qualified immunity.  He is entitled to discovery in regard to whether Defendant Ansari committed the acts which Plaintiff alleges.  This discovery does not go to the issue of qualified immunity itself inasmuch as the court concludes that if an officer were to have attacked Plaintiff in the way alleged when Plaintiff was not resisting, that would be excessive use of force.

For these reasons, the court denies Defendant Ansari's Motion for Summary Judgment without prejudice to reassert the motion after the close of discovery.

### IV.  FTCA CLAIM

Preliminarily, Defendant United States asserts that the court lacks jurisdiction over the *Bivens* claim that Plaintiff brings against the United States. However, Plaintiff expressly states that, "Mr. Lindsey is not bringing a *Bivens* claim against the United States." (Pl.'s Opp., ECF No. 83, at 8.) As such, the court will address only the FTCA claim that Plaintiff brings against the United States. Defendant moves this court to dismiss Plaintiff's FTCA claims pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, Federal Rule of Civil Procedure 56(c).

### A. Legal Standard

Under the FTCA, district courts have exclusive jurisdiction over claims against the United States for injuries or losses of property caused by negligent or wrongful acts or omissions by a government employee. 28 U.S.C. § 1346(b). The United States' liability under the FTCA is governed by the law of the place in which the act or omission occurred. *See Harris v. United States*, 422 F.3d 322, 326-27 (6th Cir. 2005). The United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. In addition, "the United States shall be entitled to assert any defense based on judicial or legislative immunity available to the employee . . . whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled." *Id*.

Defendant United States asserts that it is immune from liability in the instant suit because Defendants Strimpel and Ansari would be immune from suit under Ohio law. The Sixth Circuit though, has not addressed the issue of whether "any defense" includes the state law immunities available to the individuals whose actions gave rise to the suit. However, several courts have found that FTCA claims are governed by the law of the state and as such, the United States may assert any state law immunity defenses that would be available. *See e.g., Norton v. United States*, 581 F.2d

-17-

390, 397 (4th Cir. 1978) (The United States may assert all defenses available to the employee whose conduct gave rise to the cause of action); *Carlson v. Green*, 446 U.S. 14, 23 (1980) ("[A]n action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward."); *Brown v. United States*, 653 F.2d 196, 201 (5th Cir. 1981) ("[L]iability of the United States under the Act arises only when the law of the state would impose it."). Based on this prevailing view of FTCA claims, the court finds that the United States is immune from liability if Defendants Strimpel and Ansari are entitled to immunity under Ohio law.

Under Ohio law, state and federal law enforcement officers are statutorily immune from liability in civil actions for damages due to injury or death unless their conduct falls within an exception. *See Cook v. Cincinnati*, 652 N.E.2d 814, 820-21 (Ohio App. 1995). One exception applicable to the actions of law enforcement officers is if they acted with malicious purpose, wanton, in bad faith, or reckless. *See* Ohio Rev. Code § 2744.03(A)(6); *see also* Ohio Rev. Code § 9.88 (federal officers are entitled to the same immunity as state and local officers); Ohio Rev. Code § 9.86 (state and local officers' immunity).

### B. Defendant Strimpel

Defendant United States argues that Plaintiff fails to demonstrate how his claim of withholding, delaying or interfering with Plaintiff's medical treatment by Defendant Strimpel are actionable under Ohio law, and by extension under the FTCA. Therefore, Defendant argues that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. The court finds Defendant's argument is well-taken. Plaintiff needed to demonstrate that Defendant Strimpel's conduct was done in violation of a state-law tort. Based on the facts asserted by Plaintiff, it appears that Plaintiff is bringing a negligence action against the United States, therefore, the

Motion to Dismiss must be denied. "In order to withstand summary judgment in a negligence action, the plaintiff must establish the following elements: (1) the defendant owed plaintiff a duty of care; (2) the defendant breached that duty of care; and (3) as a direct and proximate result of defendant's breach, the plaintiff suffered injury." *See Sanfilippo v. Village Green Mgt. Co.*, No. CA2010-04-027, 2010 WL 3481981, at *2 (Ohio App. Sept. 7, 2010). Plaintiff can likely demonstrate the first and second elements for the purposes of this motion. However, he is unable to show how he suffered any injury based on Defendant Strimpel's alleged breach of his duty of care to Plaintiff. As stated above, Plaintiff cannot show that he suffered any greater injury as a result of any delay to his medical treatment. Therefore, the facts as set forth do not amount to tortious conduct, and summary judgment must be granted on this issue.

### C. Defendant Ansari

Plaintiff asserts that Defendant Ansari used excessive force against him. In order for the United States to be liable under the FTCA, a plaintiff must assert a state-law tort that has been committed against him/her. It does appear this claim is for assault and battery, therefore the Motion to Dismiss should be denied. The Motion for Summary Judgment is denied without prejudice to reasserting after the parties have had the opportunity to take discovery on this issue.

### V. CONCLUSION

For the foregoing reasons, the court grants Defendant Kanzic's Motion to Dismiss (ECF No. 74), denies Defendant Ansari's Motion for Summary Judgment without prejudice to reasserting(ECF No. 80), grants Defendant Strimpel's Motion for Summary Judgment (ECF No. 81), and denies the United States' Motion to Dismiss and grants in part and denies in part its Motion for Summary Judgment Without Prejudice (ECF No 82).

The court hereby extends discovery until January 14, 2011. The dispositive motion deadline is February 1, 2011.

IT IS SO ORDERED.

                                                           /s/*SOLOMON OLIVER, JR.*
                                                           CHIEF JUDGE
                                                           UNITED STATES DISTRICT COURT

September 30, 2010